**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2823-24

PATRICIA ZILLY,

     Plaintiff-Appellant,

v.

OCEANFIRST BANK,

     Defendant-Respondent,

and

CHRISTOPHER D. MAHER,

     Defendant.

_____

          Submitted March 17, 2026 – Decided July 6, 2026

          Before Judges Susswein and Augostini.

          On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0519-23.

          Piro Zinna Cifelli Paris & Genitempo LLC, attorneys for appellant (Alan Genitempo, on the briefs).

          Jackson Lewis PC, attorneys for respondent (Carla D. Macaluso and Colleen S. Heckman, on the brief).

PER CURIAM

Plaintiff Patricia Zilly appeals from the April 11, 2025 order granting summary judgment to defendant OceanFirst Bank and dismissing plaintiff's complaint in its entirety with prejudice.  We affirm.

I.

We summarize the pertinent facts from the motion record.  Plaintiff, a longtime branch manager at defendant's Matawan branch, was terminated for failure to follow the bank's Dual Control Security Procedures (DCSP).  The DCSP are security measures applicable to the bank's ATMs and vaults within the branch, which require one person to have one-half of a combination and another person to have the other half "to access the location with money."  As branch manager, plaintiff was:

> responsible for maintaining the integrity of dual control within the branch and [was] specifically required to . . . verify that combinations are kept confidential; verify that dual control is observed whenever it is required; and verify that dual control logs are completed properly.

A-2823-24

It is undisputed that plaintiff was responsible for ensuring that the DCSP was followed by all employees.

On June 2, 2021, plaintiff learned from another employee that the DCSP at the Matawan branch had been compromised. According to plaintiff, upon learning this news for "[t]he very first time," "she immediately reported it to her supervisor, Tino Fontes." An investigation ensued.

Defendant's senior investigator, David Mowder, reviewed defendant's security surveillance footage and applicable policies. It is undisputed that Mowder's review of surveillance footage revealed that there were "obvious violations of dual control" and that "he observed a violation of the dual control policy on each day of [] sample footage he [reviewed]." Mowder also conducted brief interviews with employees, including plaintiff. During the investigation, an employee advised that she attempted to bring the issue to plaintiff's attention previously. However, no employee confirmed that plaintiff knew of the DCSP violations before June 2.

The investigation revealed that the DCSP violations "were egregious and spanned over time." Mowder advised defendant "to terminate all [] employees at the Matawan branch, including [p]laintiff." On June 22, defendant terminated plaintiff and all employees at this branch. As the branch manager, plaintiff was

A-2823-24

terminated for "failing to manage and oversee the [DCSP] from the fall of 2020 to June 2021."

On February 21, 2023, plaintiff filed a complaint under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50, against defendant, alleging she was wrongfully terminated.[1]  Following the end of discovery, defendant filed a motion for summary judgment.  On March 28, 2025, oral argument was held, and on April 11, the court rendered its decision granting summary judgment in favor of defendant and dismissing plaintiff's complaint with prejudice.[2]

On appeal, plaintiff contends the trial court erred in granting summary judgment for two reasons: (1) it incorrectly relied upon inadmissible hearsay in making its determination; and (2) plaintiff demonstrated that defendant's proffered reasons for her termination were pretextual.

---

[1]  Defendant Christopher D. Maher filed a motion to dismiss, which was unopposed, and an order dismissing plaintiff's complaint against him was entered on June 12, 2023.

[2]  At the outset of the summary judgment proceeding, the court confirmed that counts two, four, five, seven, and eight of plaintiff's complaint were dismissed without objection from plaintiff.  This appeal does not include these counts.

A-2823-24

II.

We review a trial judge's grant or denial of a motion for summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). Rule 4:46-2(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

"Rule 4:46-2(c)'s 'genuine issue [of] material fact' standard mandates that the opposing party do more than 'point[] to any fact in dispute' in order to defeat summary judgment." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (alterations in original) (first quoting R. 4:46-2(c); and then quoting Brill, 142 N.J. at 529). Arguments based on assumptions or speculation are insufficient to

overcome summary judgment. <u>Brill</u>, 142 N.J. at 529; <u>see also</u> <u>Dickson v. Cmty.</u> <u>Bus Lines, Inc.</u>, 458 N.J. Super. 522, 533 (App. Div. 2019).

Rule 2:6-1(a)(1), in part, states that "[i]f the appeal is from a disposition of a motion for summary judgment, the appendix shall also include a statement of all items submitted to the court on the summary judgment motion and all such items shall be included in the appendix." Furthermore, <u>Rule</u> 2:6-2(a)(1) requires "every point . . . shall include in parentheses at the end of the point heading . . . if the issue was not raised below a statement indicating that the issue was not raised below."

We generally decline to consider issues that were not raised before the trial court, unless an issue goes to the jurisdiction of the trial court or concerns matters of substantial public interest. <u>J.K. v. N.J. State Parole Bd.</u>, 247 N.J. 120, 138 n.6 (2021); <u>State v. Jones</u>, 232 N.J. 308, 320-21 (2018); <u>State v. Lawless</u>, 214 N.J. 594, 605 n.2 (2013); <u>State v. Robinson</u>, 200 N.J. 1, 20-22 (2009); <u>Nieder v. Royal Indem. Ins. Co.</u>, 62 N.J. 229, 234-35 (1973); Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 3 on <u>R.</u> 2:6-2 (2026).

The plain error rule applies to issues not raised before the trial court. <u>R.</u> 2:10-2. However, "[r]elief under the plain error rule, [Rule] 2:10-2, at least in civil cases, is discretionary and 'should be sparingly employed.'" <u>Baker v. Nat'l</u>

State Bank, 161 N.J. 220, 226 (1999) (quoting Ford v. Reichert, 23 N.J. 429, 435 (1957)).

A.

We apply these well-settled legal principles to plaintiff's contentions. Plaintiff argues that the trial court improperly relied on inadmissible hearsay in granting summary judgment. Specifically, plaintiff asserts the trial court erred by relying on Mowder's hearsay statements of what the surveillance video footage depicted in support of the conclusion that plaintiff failed to manage and oversee the bank's operational controls. This contention, however, was not raised before the trial court.

Plaintiff was afforded oral argument and a full and fair opportunity to address her arguments but failed to raise this contention before the court. Moreover, the hearsay issue raised for the first time on appeal does not go to the jurisdiction of the trial court or concern a matter of substantial public interest.

Plaintiff also acknowledges the procedural deficiencies of failing to include in her point heading that this issue was not raised before the trial court as required by Rule 2:6-2(a)(1) and not including in her appendix defendant's reply to plaintiff's response to defendant's statement of undisputed material facts and defendant's response to plaintiff's counterstatement of material facts as

required by Rule 2:6-1(a)(1). The missing items, however, were included in defendant's appendix. However, "[o]ur rules do not perpetuate mere ritual. Rather the purpose is to require a litigant to make known his position to the end that the trial court may consciously rule upon it." State v. Abbott, 36 N.J. 63, 76 (1961).

Plaintiff urges us to consider this contention nonetheless because "substantial justice requires" it to be heard considering the court's adjudication of summary judgment in defendant's favor, thereby dismissing plaintiff's complaint in its entirety. Not only did plaintiff not present this issue before the trial court, but she also did not raise a hearsay objection during the summary judgment proceeding. In failing to present or even raise this issue before the trial court, plaintiff deprived defendant and the court of the opportunity to develop the record and fully respond to this issue in the context of the summary judgment motion. Moreover, plaintiff's failure to present this issue hampers our review of it in the same manner.

In defendant's Statement of Undisputed Material Facts, in relevant part, defendant stated:

> 22. Upon [] Mowder's review of the security footage, he confirmed that [DCSP] had been compromised. (Internal Investigation Report at p. 1, attached to the Speedy Cert. as Exhibit 10).

23. Upon [] Mowder's review of security footage, he was able to determine there were obvious violations of [DCSP]. (Mowder Dep. Tr. at 76:4-9, Speedy Cert., Exhibit 9).

24. Upon [] Mowder's review of security surveillance video, he observed a violation of the [DCSP] on each day of the sample footage he pulled. (Mowder Dep. Tr. 55:18 to 56:2, Speedy <u>Cert. denied</u>,., Exhibit 9).

25. Upon [] Mowder's review of the security footage, he was able to determine that [DCSP] violations were egregious and spanned over time. (Mowder Dep. Tr. at 57:20-25, Speedy Cert., Exhibit 9).

In response, plaintiff stated:

22. Admitted.

23. Admitted.

24. Admitted.

25. Admitted only that [d]efendant's representation testified to the fact but dispute the veracity of the fact. <u>See</u> [p]laintiff's Counterstatement of Facts ¶¶ 11-14.

We agree with defendant that plaintiff neither challenged Mowder's statements as inadmissible hearsay nor identified any specific evidence in the record to dispute these facts and create a genuine issue of material fact. Thus, these statements are admitted and undisputed and were therefore properly

9

referenced by the trial court in assessing the merits of the summary judgment motion.

We decline to consider this issue because it was not presented to the trial court and preserved for appellate review. Moreover, plaintiff acknowledged these facts, which she now seeks to disavow, and the court referenced them in ruling upon the summary judgment motion.

Although we decline to address plaintiff's contention because it was not raised before the trial court, we note that hearsay is defined as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." N.J.R.E. 801(c). "[S]tatements that might otherwise be hearsay may be admissible if they are not offered to prove the truth of the matter asserted." El-Sioufi v. St. Peter's University Hospital, 382 N.J. Super. 145, 164 (App. Div. 2005) (citing N.J.R.E. 801 (c); and then citing State v. Long, 173 N.J. 138, 152 (2002)). In other words, statements not offered for the "truthfulness of their contents, but only to show that they were in fact made and that the listener took certain action as a result thereof," are not inadmissible hearsay. Ibid.

The Supreme Court has held "within the usual limits that govern the admissibility of evidence as a whole, an investigative report concerning an

employee is admissible as non-hearsay statements whenever the employer's motivations are directly at issue." Carmona v. Resorts Int'l Hotel, 189 N.J. 354, 376 (2007). In this case, Mowder's statements of the contents of the surveillance video footage pertain to defendant's motives for terminating plaintiff, and whether defendant "acted reasonably in light of that information." El-Sioufi, 382 N.J. Super. at 165. Therefore, Mowder's statements in his investigative report regarding his viewing of the surveillance footage are not hearsay.

## III.

We turn next to plaintiff's contention that the trial court erred in granting defendant summary judgment because plaintiff demonstrated defendant's proffered reasons for termination were pretextual. Plaintiff's complaint alleges age discrimination and retaliation in violation of the LAD.

### A. Age Discrimination Claim

Plaintiff argues she has demonstrated genuine issues of material fact to withstand summary judgment on her LAD age discrimination claim. Plaintiff asserts the trial court did not take issue with her "ability to set forth a [prima facie] case of age discrimination." Rather, she argues the court improperly accepted defendant's reason for terminating her employment—i.e., failing to manage and oversee employee compliance with the DCSP—and erred in not

11

finding this reason pretextual.  The record, however, does not support plaintiff's contention.

The LAD's "overarching goal . . . is nothing less than the eradication 'of the cancer of discrimination.'"  Zive v. Stanley Roberts, Inc., 182 N.J. 436, 446 (2005) (internal citations omitted) (quoting Fuchilla v. Layman, 109 N.J. 319, 334 (1969)).  The LAD prohibits unlawful discrimination "in all aspects of the employment relationship," Schiavo v. Marina Dist. Dev. Co., LLC, 442 N.J. Super. 346, 367 (App. Div. 2015) (quoting Alexander v. Seton Hall Univ., 204 N.J. 219, 227-28 (2010)), while acknowledging "the authority of employers to manage their own businesses."  Zive, 182 N.J. at 446 (citing Viscik v. Fowler Equip. Co., 173 N.J. 1, 13 (2002)).  "What makes an employer's personnel action unlawful is the employer's intent."  Ibid. (citing Marzano v. Computer Sci. Corp., 91 F.3d 497, 507 (3d Cir. 1996)).

To establish a prima facie case of wrongful termination based on age discrimination, a plaintiff must prove he or she was:  (1) in a protected class; (2) performing the job at a level that met the employer's legitimate expectations; (3) nevertheless discharged; and (4) "replaced by a 'candidate sufficiently younger to permit an inference of age discrimination.'"  Young v. Hobart W. Grp., 385

N.J. Super. 448, 458 (App. Div. 2005) (quoting <u>Bergen Com. Bank v. Sisler</u>, 157 N.J. 188, 210-13 (1999) (internal quotations and citations omitted)).

In analyzing such claims under the LAD, New Jersey adopted the "burden-shifting methodology," <u>Battaglia v. United Parcel Serv., Inc.</u>, 214 N.J. 518, 546 (2013), set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973). Under this analysis:

> (1) plaintiff must come forward with sufficient evidence to constitute a prima facie case of discrimination; (2) defendant must then show a legitimate nondiscriminatory reason for its decision; and (3) plaintiff must then be given the opportunity to show that defendant's stated reason was merely a pretext or discriminatory in its application.
>
> [<u>El-Sioufi</u>, 382 N.J. Super. at 166 (quoting <u>Dixon v. Rutgers, the State Univ. of N.J.</u>, 110 N.J. 432, 442 (1988) (citations omitted)).]

Giving plaintiff the benefit of all reasonable inferences, the trial court found "a question of fact exist[ed] as to whether [p]laintiff [could] demonstrate a prima facie case of discrimination that her termination was based upon her age in violation of the LAD and [that] she falls within the protected class." However, based on our de novo review and giving plaintiff the benefit of every reasonable inference, we are satisfied that the record supports a finding that plaintiff made a prima facie showing of age discrimination based on: a woman in her late fifties

13

at the time of her discharge; sufficiently and without incident performed her job as a branch manager for many years; was discharged on June 22, 2021; and according to defendant's answer to the complaint, the manager who replaced plaintiff was younger.

Defendant's "legitimate non-discriminatory reason" for plaintiff's termination was her lack of oversight of DCSP operations. As the trial court found, "[p]laintiff was specifically terminated for failing to manage and oversee operational controls at the bank from the Fall of 2010 to June of 2021."

Plaintiff admitted that one of her primary responsibilities as manager was to supervise the daily operational activities at the bank and to ensure that the employees followed the DCSP as well as all bank policies and procedures. Plaintiff admitted that she did not "look and see" if DCSP was being followed by the employees but rather relied upon her staff to comply with these procedures.

Defendant's investigation included reviewing video surveillance footage and conducting employee interviews. As a result of defendant's investigation, all branch employees were terminated. Defendant determined the length of time of the DCSP compromise was critical and weighed heavily in its determination to terminate all branch employees. Plaintiff offered no competent, credible

14

evidence to suggest that the decision to terminate her was a pretext to hide age discrimination.

Plaintiff's only suggestion to refute defendant's reason for terminating plaintiff was that in defendant's Westfield branch, "two younger employees who intentionally and inaccurately signed off on proof sheets were not terminated," and that "two older employees involved were terminated." (emphasis omitted). We agree with the trial court's characterization of plaintiff's statements as "self-serving" and without support in the record. The record shows that the two employees at the other branch who violated the DCSP were terminated. Importantly, similar to plaintiff, the Westfield branch manager, who was younger than plaintiff, was terminated as well for failing to "manage and oversee operational control of [DCSP]." The trial court correctly found no genuine issue of material fact demonstrating that defendant's reasons for terminating plaintiff were not legitimate or were a pretext for age discrimination.

## B. Retaliation

We next address plaintiff's claim that she was terminated in retaliation for requesting accommodations for a "visibly disabled" employee. In her complaint, plaintiff alleges that "[j]ust prior to [her] termination, she had put in multiple requests and complaints to [d]efendant[] [] in an effort to obtain handicap

accessibility and/or handicap seating in her branch." Plaintiff claimed defendant denied these requests, and that defendant "used [the employee's disability] as one of the main reasons for [p]laintiff's termination."

To establish a prima facie case of retaliation under the LAD, plaintiff must show he or she was "(1) . . . engaged in a protected activity know to [] defendant; (2) thereafter subjected to an adverse employment decision by [] defendant; and (3) there was a causal link between the two." Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543, 548-49 (App. Div. 1995). In this case, the adverse employment action is plaintiff's termination. See Mancini v. Twp. of Teaneck, 349 N.J. Super. 527, 564 (App. Div. 2002).

Although plaintiff claims she made "numerous requests to [d]efendant to accommodate [the employee's] disability starting in the fall of 2020," the record shows that plaintiff made three requests and the final request was made in the fall of 2020. Plaintiff, however, was not terminated until June 2021. The lack of temporal proximity weakens plaintiff's contention. "Where the timing alone is not 'unusually suggestive,' [] plaintiff must set forth other evidence to establish the causal link" between the adverse consequence and the protected activity. Young, 385 N.J. Super. at 467.

The only additional evidence plaintiff proffers is that the employee's disability was mentioned in plaintiff's termination letter. Specifically, the letter referenced plaintiff's failure to report the employee's fall in the branch parking lot in the fall of 2020. We discern no causal connection, however, between plaintiff's failure to report the employee's fall and her requests for accommodations on behalf of this employee. The trial court correctly found that plaintiff did not demonstrate that the decision to terminate plaintiff's employment was done in retaliation for "assisting her employee, who [was] alleged to have a disability as being obese and/or overweight."

In sum, we are satisfied based on our de novo review that plaintiff failed to establish a prima facie showing of pretext as to age discrimination or retaliation under the LAD; therefore, we discern no reason to disturb the trial court's decision granting summary judgment in defendant's favor.

To the extent we have not addressed plaintiff's remaining contentions, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

17

A-2823-24